1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT
9          FOR THE NORTHERN DISTRICT OF CALIFORNIA
10
11   WESTERN/SCOTT FETZER CO,              No   C-03-4114 VRW
12          Plaintiff,                     ORDER
13          v
14   BRADEN PARTNERS, LP, et al,
15          Defendants.
    ————————————————————————————/
16
17   AND RELATED COUNTERCLAIMS AND
18   THIRD-PARTY CLAIMS
19   ————————————————————————————/
20
21          On September 10, 2003, plaintiff Western/Scott Fetzer
22   Company ("Western") brought this diversity suit against defendants
23   Braden Partners, LP ("Braden") and Braden Management Corporation
24   ("Braden Management") to recover money owed for several thousand
25   oxygen cylinders that Western had sold to defendants.  Doc #1-1.
26   On April 19, 2004, Braden asserted counterclaims against Western
27   for negligent and intentional misrepresentation, breach of express
28   warranty and breach of written contract.  Doc #22.  Braden also

United States District Court

For the Northern District of California

asserted counterclaims against both Western and Catalina Cylinders, a division of Aluminum Precision Products, Inc, ("Catalina"), which had produced the oxygen cylinders, for breach of implied warranty, breach of implied warranty of fitness, breach of oral contract and negligence.  Id.  On September 13, 2004, Catalina filed third-party claims against Young Do Ind Co, Ltd ("Young Do") for indemnity, and contribution and apportionment of fault.  Doc #47.

On November 29, 2004, the court granted summary judgment for Western on its claim against Braden.  Doc #78.  Five motions remain to be decided here.  On December 22, 2005, Catalina moved for summary judgment against Braden.  Doc ##125, 126.  On August 22, 2005, Young Do moved for summary judgment against Catalina.  Doc ##95, 96.  On September 15, 2005, Catalina requested leave to amend its third-party complaint to add claims for breach of implied warranty and negligent misrepresentation against Young Do.  Doc ##100; 101, Ex B.  On October 7, 2005, Western requested leave to amend its answer by adding third-party claims against Young Do and Catalina for implied indemnity and comparative indemnity and contribution; Western also seeks claims against Catalina for express indemnity, breach of implied warranty and negligent misrepresentation.  Doc ##104; 105, Ex B.  And on October 13, 2005, Braden moved for leave to file cross-claims against Catalina and Young Do for a tort of another.  Doc ##107; 108, Ex 1.

A hearing was held on Catalina's motion for summary judgment on February 16, 2006, and on the remaining motions on November 17, 2005.  For the reasons stated below:  (1) Catalina's motion for summary judgment is GRANTED; (2) Young Do's motion for summary judgment is GRANTED; (3) Catalina's motion for leave to

2

amend its third-party complaint is GRANTED; (4) Western's motion
for leave to amend its answer is GRANTED IN PART AND DENIED IN PART
and (5) Braden's motion for leave to file cross-claims is GRANTED.

I

Young Do is a South Korean valve manufacturer that makes
post medical valves that are incorporated in oxygen assemblies used
by patients who need oxygen supplementation.  Young Do SJ Br (Doc
#96) at 7:24-25; Catalina SJ Br (Doc #115) at 4:8-21.  Post medical
valves thread into medical oxygen cylinders at one end and attach
to regulators at the other end.  A seal is formed by compressing
one or two teflon o-rings between the cylinder gland and the valve.
Young Do SJ Br at 7:27-8:19; Catalina SJ Br at 4:18-19.  All valves
sold or used in the United States must comply with standards set by
the Compressed Gas Association ("CGA").  Catalina SJ Br at 4:19-21.

Young Do sold these valves to Superior Valve Company
("Superior"), which in turn resold the valves to oxygen cylinder
manufacturers.  Byun Decl (Doc #97), ¶¶ 2-3.  In 1998, another
valve manufacturer that produced "Sherwood valves" bought the
Superior Valve Company and stopped ordering valves from Young Do.
Id ¶¶ 8-9.  Young Do then began marketing their valves directly to
cylinder manufacturers that used Superior valves.  Id ¶ 9.

Catalina is a company that manufactures aluminum
cylinders for storing oxygen and other gases.  Newell Affidavit
(Doc #113), ¶ 3.  Catalina does not make its own valves, but sells
its product in three different configurations: cylinders, cylinders
with valves that are not installed and cylinders with valves
installed.  Id ¶ 4.  Beginning in late 1999, Catalina bought post

United States District Court

For the Northern District of California

medical valves from Young Do, which manufactured the valves based on the same dimensions and specifications as those produced for Superior.  Id ¶ 10; Byun Decl, ¶ 10.

In 2000, Catalina's general manager and vice president Tom Newell ("Newell") informed Young Do that its o-rings were not perfectly round and did "not comply with the specifications on the standards."  Byun Decl, Ex 1.  Catalina alleges that its specifications are within the industry standard for the no 210 teflon o-rings used in the medical gas industry.  Newell Decl, ¶ 18 & Ex 5; Catalina SJ Br at 7:28-8:3.  Young Do indicated that the o-ring manufacturer would change the o-ring to match one depicted in a drawing furnished by Catalina and, in July 2000, Catalina approved new o-rings supplied by Young Do.  Byun Decl, Exs 6, 18.

Western is a gas products supplier that buys compressed gas cylinders and valves from third parties, attaches its own regulator to the valve and resells the completed assembly.  Companies like Braden then fill the cylinder tanks with oxygen and sell or lease the cylinders to patients who need oxygen supplementation.  Doc #78 at 2:2-6.  Western started buying Catalina cylinders in 2000 and approved Young Do's valves for Catalina cylinders in 2001.  Newell Affidavit, ¶¶ 7, 11.

According to Catalina, in November 2001, Western informed Catalina that Young Do valves did not meet the tolerance set by the CGA.  Id ¶ 13.  Young Do corrected the defect and replaced these valves with CGA-compliant ones.  Id ¶ 15.

In January 2002, Ward Dekker ("Dekker"), a manager at Catalina, reported to Newell in an internal memorandum that some customers had complained of leaky valve/cylinder assemblies.  Byun

4

United States District Court

For the Northern District of California

Decl, Ex 20 at 2.  Dekker concluded that the smaller diameter of the Young Do valve body coupled with a slightly smaller o-ring caused leaks in rare cases.  Id.  Newell forwarded this report, along with some Sherwood and Young Do valves, to Young Do.  Id at 1.  Young Do then agreed to increase both the valve and o-ring diameters.  Id, Ex 21.

On January 23, 2002, Dekker sent an email to Young Do listing in Catalina's order of preference three recommendations on how to fix the leak:  (1) increase only the valve body diameter; (2) increase the o-ring size or (3) increase both the valve body diameter and the o-ring size.  Id, Ex 22.  Young Do accepted Catalina's first recommendation and sent samples to Catalina, which Dekker accepted as within tolerance.  Id, Exs 23, 24.

In December 2002, Braden returned to Western 1900 Catalina cylinders with Young Do valves that were leaking.  Kern Decl (Doc #134, Ex 1), ¶ 18.  Dekker and some Western and Braden representatives then met to discuss potential causes for the leaking valves.  Dekker Affidavit (Doc #114), ¶ 8.  Based on a proposal drafted by Western's representatives on December 20, 2002, Braden claims that Catalina agreed at the meeting to replace all Young Do valves with Sherwood valves.  Foreman Decl (Doc #134), Ex 42; Doc #132 at 9.  Catalina claims that it only agreed to replace leaking Young Do/Catalina assemblies with Sherwood valves, which Catalina has been doing since January 2003.  Dekker Affidavit, ¶ 9; Newell Affidavit, ¶ 21.  This purported oral agreement forms the basis for Braden's breach of oral contract claim against Western and Catalina.

//

5

In January 2003, Catalina again contacted Young Do, because the valve pin holes on the necks of some of the valves were not in the correct location.  Newell Affidavit, ¶ 16.  Young Do again corrected the defect and shipped back CGA-compliant valves. Id ¶ 17.

## II

In reviewing a summary judgment motion, the court must determine whether genuine issues of material fact exist, resolving any doubt in favor of the party opposing the motion.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v Liberty Lobby, Inc, 477 US 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. And the burden of establishing the absence of a genuine issue of material fact lies with the moving party.  Celotex Corp v Catrett, 477 US 317, 322-23 (1986).  Summary judgment is granted only if the moving party is entitled to judgment as a matter of law.  FRCP 56(c).

The nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided in FRCP 56, supporting its claim that a genuine issue of material fact exists.  TW Elec Serv, Inc v Pacific Elec Contractors Ass'n, 809 F2d 626, 630 (9th Cir 1987).  The evidence presented by the nonmoving party "is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson,

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

477 US at 255.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id at 249.

A

Catalina contends that Braden's claims for breach of implied warranty and breach of implied warranty of fitness must fail because there is no contractual privity between the parties. Catalina SJ Br at 10.  Under California law, "[v]ertical privity is a prerequisite * * * for recovery on a theory of breach of the implied warranties of fitness and merchantability."  US Roofing, Inc v Credit Alliance Corp, 228 Cal App 3d 1431, 1441, 279 Cal Rptr 533 (1991) (internal citation omitted).  And "there is no privity between an original seller and a subsequent purchaser who is in no way a party to the original sale."  Burr v Sherwin Williams Co, 42 Cal 2d 682, 695, 268 P2d 1041 (1954).

In this case, Braden and Catalina were not in privity. Even though Catalina stenciled Braden's trade name on the oxygen cylinders intended for it, Braden has not shown that Catalina was doing anything more than fulfilling its obligations to Western. And more importantly, Braden never dealt directly with Catalina during the period in which Catalina supplied the allegedly defective valves.

Braden nonetheless contends that a narrow exception to the privity rule applies here.  Braden SJ Br at 15-16.  Originally developed for cases involving defective foodstuffs, this exception enables injured plaintiffs to file claims against a food manufacturer, even though the plaintiff purchased the food from an intermediary.  Klein v Duchess Sandwich Co, 14 Cal 2d 272, 281-82,

**United States District Court**
For the Northern District of California

93 P2d 799 (1939). Lower courts have expanded this exception to encompass vaccines and pesticides that, like the foodstuffs, were defective and injured the plaintiffs who had ingested them. See Arnold v The Dow Chemical Company, 91 Cal App 4th 698, 720, 110 Cal Rptr 2d 722 (2001) (pesticides); Gottsdanker v Cutter Laboratories, 182 Cal App 2d 602, 608, 6 Cal Rptr 320 (1960) (vaccines). Braden contends that this exception should apply here because, like vaccines, medical-grade oxygen is a "drug regulated by the FDA." Braden SJ Br at 15.

Braden's argument is not persuasive. The cases applying the foodstuff/vaccine exception are distinguishable on at least two grounds. First, those cases treat an ingestible substance, rather than a mechanism releasing the substance, as the relevant defective product for the purpose of the exception. More importantly, those cases involved actual harm to the person who had ingested the defective product; here, there is no evidence that the defective valves caused injury to anyone. As a federal court sitting in diversity, this court is unwilling to expand the narrow foodstuff/vaccine exception in this case beyond the boundaries the California courts have set.

B

Catalina also argues that there was no agreement to replace all Young Do valves already supplied to Braden, and that Braden's claim for breach of oral contract therefore fails. Catalina SJ Br at 12. For an enforceable contract to exist, California law requires a "manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will

conclude it." <u>Donovan v Rrl Corp</u>, 26 Cal 4th 261, 271, 27 P3d 702 (2001) (internal citation omitted).  Further, the "objective manifestation of the party's assent ordinarily controls, and the pertinent inquiry is whether the individual to whom the communication was made had reason to believe that it was intended as an offer."  Id (internal citation omitted).

Braden states that it believed that Catalina had manifested its willingness to replace all Young Do valves.  But the record does not support this contention.  There is no reason to believe that Western's December 20, 2002, proposal can be attributed to Catalina.  Braden also points to the declaration of Alan Kern, Braden's director of operations, who stated that, at the December 18, 2002, meeting with representatives of Catalina and Western, "we all agreed" that the Young Do valves would be replaced.  Kern Decl, ¶ 16.  But in Kern's subsequent deposition, he stated that "there was no decision or conclusions made on that request at the meeting."  Foreman Decl, Ex 8, 105:22-23.  When asked to clarify whether the parties had decided that all of Braden's inventory would be exchanged, Kern reiterated, "That decision or conclusion was not made definitively at that meeting."  Id at 106:13-14.  See also id at 107:2-18.  In California, admissions against interest are considered so highly credible that, on motions for summary judgment, they "should receive a kind of deference not normally accorded evidentiary allegations in affidavits."  <u>D'Amico v Bd of Medical Examiners</u>, 11 Cal 3d 1, 22, 520 P2d 10 (1974).  This is especially true when the "admission is obtained * * * in the context of an established pretrial procedure whose purpose is to elicit facts."  Id.

**United States District Court**

For the Northern District of California

The court could follow <u>D'Amico</u>'s lead by crediting Kern's deposition and disregarding his contrary declaration.  But it need not do so to decide this issue.  Catalina also asserts that, even had it made an offer to Braden, there was neither acceptance by Braden nor consideration, both of which are required by California law.  Catalina SJ Br at 14; 1 Witkin, <u>Summary of California Law</u> (10th ed 2005) Contracts, §§ 116, 202.  In its opposition brief, Braden does not attempt to demonstrate acceptance or consideration.  See Braden SJ Br at 16.  Braden does state that, "[b]ecause of this agreement, Braden agreed to continue buying cylinders from Western."  Id at 8.  Without deciding whether this arrangement constitutes valid consideration for a contract between Braden and Western, it clearly does not constitute consideration with respect to Catalina.

Accordingly, the court finds that no oral contract existed between Catalina and Braden to replace all the Young Do valves that had been provided to Braden.

C

Turning to Braden's negligence claim, Catalina argues that it fails on two grounds.  First, Catalina denies any responsibility for the defect in the valve design.  Catalina SJ Br at 15.  Second, even if it shares responsibility for the defect, Catalina contends that California's economic loss rule bars recovery.  Id at 15-16.

Under the economic loss rule, there is no recovery in tort for economic losses without separate injury to persons or property.  <u>Seely v White Motor Co</u>, 63 Cal 2d 9, 18, 403 P2d 145 (1965).  Economic losses include, inter alia, damages for

10

inadequate value, costs of repair and replacement of the defective product and consequent claims of lost profits.  <u>Sacramento Regional Transit Dist v Grumman Flxible</u>, 158 Cal App 3d 289, 294, 204 Cal Rptr 736 (1984).  The rule is intended to ensure that a manufacturer bears the risk for physical injury and property damage caused by a defective good but does not bear costs for a product's failure to meet a consumer's economic expectations.  <u>Seely</u>, 63 Cal 2d at 18.  Contract law, not tort law, governs the latter situation.  See id.

Braden makes two arguments to avoid the bar imposed by the economic loss rule.  First, Braden contends that the rule does not apply because property separate from the defective valve was injured.  Braden SJ Br at 22.  In particular, Braden alleges that the oxygen in the cylinders was "damaged" as it escaped through the defective valves, and that there is a genuine issue of material fact whether the "damaged" oxygen constitutes a separate product. Id.

The court is not persuaded by this argument.  First, even assuming that the valves caused the oxygen to escape, the oxygen was lost, not damaged.  Second, the cases Braden cites involve a defective component causing verifiable physical damage to the assembly containing the component; none involves property simply disappearing into the ether.  See <u>KB Home v Superior Court</u>, 112 Cal App 4th 1076, 5 Cal Rptr 3d 587 (2003); <u>Jimenez v Superior Court</u>, 29 Cal 4th 473, 58 P3d 450 (2002).  If anything was injured in this case, it was not the oxygen but Braden, which has lost its property.  But, as discussed above, the economic loss rule is intended to ensure that redress for lost property alone,

United States District Court

For the Northern District of California

unaccompanied by collateral harm, may only be sought under contract law.  See <u>Seely</u>, 63 Cal 2d at 18.

Braden also argues that, even if the economic loss rule applies, California's limited "special relationship" exception enables recovery here.  Braden SJ Br at 18-22.  Under this exception, if a defendant has a "special relationship" with a plaintiff, then the defendant owes the plaintiff a duty of care.  <u>J'Aire Corp v Gregory</u>, 24 Cal 3d 799, 804, 598 P2d 60 (1979).  If this duty exists, "[r]ecovery for injury to one's economic interests, where it is the foreseeable result of another's want of ordinary care, should not be foreclosed simply because it is the only injury that occurs."  Id at 806.  In determining whether a special relationship exists, the court balances the following six factors:

> (1)  The extent to which the transaction was intended to affect the plaintiff;
>
> (2)  The foreseeability of harm to the plaintiff;
>
> (3)  The degree of certainty that the plaintiff suffered injury;
>
> (4)  The closeness of the connection between the defendant's conduct and the injury suffered;
>
> (5)  The moral blame attached to the defendant's conduct and
>
> (6)  The policy of preventing future harm;

Id at 804.

In this case, the first three factors favor imposing a duty.  By stenciling Braden's trade name on the oxygen cylinders, Catalina showed that it was at least aware that those cylinders would be received by Braden.  Doc #134, Ex 3, 101:14-16; see <u>Ales-Peratis Foods International, Inc v American Can Co</u>, 164 Cal App 3d

United States District Court

For the Northern District of California

277, 289, 209 Cal Rptr 917 (1985).  Accordingly, Catalina could foresee that any damage suffered would be suffered by this particular plaintiff.  See Chameleon Engineering Corp v Air Dynamics, Inc, 101 Cal App 3d 418, 423, 161 Cal Rptr 463 (1980).  It is also uncontested that Braden suffered actual harm by losing oxygen from its leaking cylinders.

The fifth and sixth factors weigh slightly against imposing a duty.  Faulty oxygen cylinders could conceivably affect the safety and well-being of their users.  See Platte Anchor Bolt, Inc v IHI, Inc, 352 F Supp 2d 1048, 1056 (2004).  But even with 1900 leaking cylinders, there apparently have not been any injuries to persons or property, suggesting a very low risk of harm.  And imposing a duty would not necessarily promote the policy of preventing future harm, because although this duty would possibly encourage manufacturers to exercise greater care when designing components, it would just as likely discourage manufacturers from suggesting improvements to products for fear of future liability.

Moreover, the fourth factor, the closeness of the connection between defendant's conduct and the injury suffered, weighs strongly against imposing a duty on Catalina.  Any connection is limited to suggestions for improvement that Catalina made to Young Do, the valve supplier, between May 2000 and the start of 2002.  Braden SJ Br at 3-5.  Braden alleges that Catalina thereby assumed responsibility for controlling the valve design.  Braden SJ Br at 14.  But Catalina maintains that it never assumed this responsibility, which ultimately rested with Young Do.  Catalina SJ Br at 9, 15.  In addition, Braden's expert report does not state that Catalina's specifications resulted in changes that

United States District Court

For the Northern District of California

caused the valves to leak.  See Doc #133, Ex 3, 8-9.  Accordingly, it is at best questionable whether Catalina's conduct caused Braden's economic loss.   This fact starkly distinguishes the case at bar from those that Braden has cited, in which the defendant's conduct clearly had caused plaintiff's injury.  See Platte Anchor Bolt, 352 F Supp 2d at 1056; North American Chemical Co v Superior Court, 59 Cal App 4th 764, 787, 69 Cal Rptr 2d 466 (1997); Ales-Peratis, 164 Cal App 3d at 289; Pisano v American Leasing, 146 Cal App 3d 194, 197, 194 Cal Rptr 77 (1983) and J'Aire, 24 Cal 3d at 805.

Considering the tenuous connection between Catalina's conduct and Braden's injury, this court is unwilling to expand a limited exception to a settled California rule by imposing a duty on Catalina.  Although there may still be a genuine issue of material fact regarding Catalina's involvement in the valve-design process, without a corresponding duty, Braden cannot prevail as a matter of law on its negligence claim.  Moreover, this issue will presumably be litigated in the myriad claims that still remain, and in the new claims that this order permits Catalina, Western and Braden to file.

Accordingly, the court GRANTS Catalina's motion for summary judgment on Braden's claims.

D

Having granted summary judgment in favor of Catalina on all claims, the court finds it unnecessary to consider Catalina's 39 objections to evidence in support of its motion for summary judgment.  See Doc #136.  Accordingly, the court DENIES those objections as moot.

United States District Court

For the Northern District of California

III

Turning now to Young Do's motion for summary judgment against Catalina, the court notes that Catalina's third-party claims seeking indemnity and contribution and apportionment of fault depend entirely on Braden's claims against Catalina for breach of warranty, breach of contract and negligence.  See Doc #47.  Having granted summary judgment in favor of Catalina on Braden's claims, the court finds that Catalina's third-party claims against Young Do cannot survive.  Accordingly, the court GRANTS summary judgment in favor of Young Do on these claims.

IV

Turning now to the motions to amend, FRCP 15(a) provides that a party no longer permitted to amend its pleadings "as a matter of course * * * may amend the party's pleading only by leave of court or by written consent of the adverse party."  "In the absence of any apparent or declared reason — such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc — the leave sought should, as the rules require, be 'freely given.'"  Foman v Davis, 371 US 178, 182 (1962) (quoting FRCP 15(a)).  And "[a]mendments seeking to add claims are to be granted more freely than amendments adding parties."  Union Pac RR Co v Nevada Power Co, 950 F2d 1429, 1432 (9th Cir 1991).  In any case, the decision to grant or deny leave to amend rests with the discretion of the court.  See Swanson v United States Forest Service, 87 F3d 339, 343 (9th Cir 1996).

FRCP 16(b) can also bear on motions to amend.  That rule states in relevant part that once the district court has entered a scheduling order that limits the time to amend the pleadings, "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge * * *."  Nonetheless, it does not appear FRCP 16(b)'s good cause requirement applies here because the court did not set a deadline for amending the pleadings in this action.  Doc ##40, 89.  And in any event, the court finds that good cause exists for each of the amendments that the court permits below.

The court address the following motions in turn: (1) Catalina's motion for leave to amend its third-party complaint; (2) Western's motion for leave to amend its answer and (3) Braden's motion for leave to file cross-claims.

### A

Catalina seeks leave to add two more third-party claims against Young Do for breach of implied warranty and negligent misrepresentation.  Doc ##100; 101, Ex B.  Catalina maintains that through discovery, Catalina "began to suspect that Young Do may be liable to Catalina Cylinders for damages it has sustained due to Young Do's valves, in addition to liability for Catalina Cylinders' litigation costs."  Id at 5.  In particular, Catalina contends that it "has not unnecessarily delayed in bringing its motion for leave to amend its third-party complaint, as it was only recently able to depose Young Do's persons most knowledgeable, and only recently received Young Do's documents."  Id.  Catalina also asserts that Young Do will not be prejudiced because Young Do is already a party

United States District Court

For the Northern District of California

to this action and it is already defending against claims arising out of the same facts and transactions.  Id at 6.

Young Do challenges Catalina's motion on several grounds. First, Young Do asserts that Catalina has delayed in filing these claims and that Catalina "knew [at the time of filing of the third-party complaint] of the importance of the O ring in forming a seal and modified the O ring with the intent of improving on its design."  Doc #109 at 9.  Additionally, Young Do contends that Catalina's motion to amend might be intended to stave off Young Do's motion for summary judgment.  Id at 10.  Young Do also asserts that the requested amendment will "necessitate the filing of an additional motion for summary judgment and additional discovery" beyond the December 30, 2005, discovery cutoff date.  Id at 11. Finally, Young Do maintains that Catalina has not stated a claim for misrepresentation because its proposed amended pleading does not meet the particularized pleading requirement of FRCP 9(b).  Id at 12-13; see Doc #101-3 for the proposed amended pleading.

The court disagrees with each of Young Do's arguments. Young Do does not cite to any evidence to support its assertion that Catalina delayed in filing this motion to amend.  And by deciding the summary judgment issue before entertaining Catalina's motion to amend, the court has mooted Young Do's concern that this motion to amend, or any of the other motions to amend currently at issue, were filed to stave off summary judgment.

Furthermore, Catalina's motion, which was filed on September 15, 2005, was not filed especially late in the discovery period.  By the time discovery closed on December 30, 2005, Young Do had over three months to conduct discovery on Catalina's new

United States District Court

For the Northern District of California

1    claims.  Moreover, any potential prejudice to Young Do is minimized

2    because at least some of the discovery on the new claims overlaps

3    with discovery on the original claims.  And in any case, Young Do

4    can later move the court to reopen discovery if it has good cause

5    to do so.

6         Finally, Young Do's problem with Catalina's

7    misrepresentation claim relates more to the form of the proposed

8    amended pleading rather than with the merits of Catalina's claim.

9    Because Catalina is only moving for <u>leave</u> to amend its third-party

10   complaint rather than actually filing the amended pleading, Young

11   Do's concerns with the form of the pleading would be better

12   addressed on a motion to dismiss rather than in opposing the

13   present motion for leave to amend.

14        In short, the court finds that Young Do has not shown any

15   serious prejudice to mitigate FRCP 15(a)'s otherwise liberal stance

16   toward granting motions to amend, particularly when only new claims

17   and not new parties are being added.  Accordingly, the court GRANTS

18   Catalina's motion for leave to amend its third-party complaint.

                                   B

20        Western also seeks leave to amend its answer by adding

21   third-party claims against both Young Do and Catalina for implied

22   indemnity and comparative indemnity and contribution, and

23   additional claims against Catalina for express indemnity, breach of

24   implied warranty and negligent misrepresentation.  Doc #104; #105,

25   Ex B.  Western notes the proposed third-party claims arise out of

26   the same transaction or occurrence as the currently pending claims

27   and that the motion is part of "a good faith effort to ensure a

28

United States District Court

For the Northern District of California

full and final resolution of all claims among the existing parties."  Doc #104 at 6.

In opposition, Young Do repeats the argument, which the court has already rejected, that it is too late in discovery to grant leave to amend.  Doc #110 at 7.  Relying on the privity of contract and economic loss doctrines, Young Do also argues that "[Western] cannot bring any tort claims against [Young Do]" and that "[Western] has no contract claims and no contract with [Young Do]" and hence there "exists no independent grounds of liability on the part of [Young Do]."  Id at 9.  See also id at 7-10.  But Young Do's argument is beside the point because Western does not contend that Young Do is directly liable to Western; rather Western's proposed claims against Young Do only seek indemnity and contribution.  Hence, the privity of contract and economic loss doctrines would at best preclude direct liability claims against Young Do that Western does not seek to assert here.  Moreover, because it is unclear whether these doctrines bar Braden's claims against Western, the court cannot conclude that Western's third-party claims against Young Do are futile.

Nonetheless, the court notes that Western's claims for contribution against Catalina and Young Do are unripe.  "A right of contribution can come into existence only after rendition of a judgment declaring more than one defendant jointly liable to the plaintiff."  Coca-Coca Bottling Co v Lucky Stores, Inc, 11 Cal App 4th 1372, 1378, 14 Cal Rptr 2d 673 (1992) (citing Cal Code Civ Pro § 875(c)).  Because no judgment has been entered against Western on Braden's counterclaims, Western cannot yet assert a contribution claim against either Catalina or Young Do.

United States District Court

For the Northern District of California

1           Accordingly, because Western's contribution claims are

2  unripe, the court DENIES Western's motion for leave to amend to add

3  these third-party claims against Young Do and Catalina.  The court

4  GRANTS Western's motion to add the implied indemnity and

5  comparative indemnity claims against Young Do and Catalina and the

6  express indemnity, breach of implied warranty and negligent

7  misrepresentation claims against Catalina.

8                          C

9           Finally, Braden moved under FRCP 13 and 15 for leave to

10  file cross-claims against Catalina and Young Do for a tort of

11  another.  Doc ##107; 108, Ex 1.  Braden contends that it is filing

12  this motion "[b]ecause both Western and Catalina are adding tort

13  claims against Catalina Cylinders and Young Do * * *."  Id at 5.

14  Accordingly, Braden asserts that because of Catalina's alleged

15  negligent misrepresentation to Western and Young Do's alleged

16  negligent misrepresentation to Catalina, Braden is entitled to sue

17  Catalina and Young Do "to recover compensation fo[r] the reasonable

18  necessary loss of time, attorney's fees, and other expenditures

19  incurred thereby."  Id at 6.

20           Catalina did not oppose Braden's motion, but Young Do

21  did, asserting yet again the already-rejected argument that it is

22  too late in the discovery period for Braden to file its cross-

23  claims.  Doc #111 at 3.  Additionally, Young Do contends that

24  parties must generally bear their own attorneys fees and costs, and

25  that Braden is seeking compensation that is rarely granted.  Id at

26  4-5.  But even if Young Do is correct, Young Do has not shown that

27  Braden is precluded, as a matter of law, from recovering on its

28  claim.  Moreover, the primary case that Young Do cites — <u>Davis v</u>

United States District Court

For the Northern District of California

1   <u>Air Technical Industries, Inc</u>, 22 Cal 3d 1, 582 P2d 1010 (1978),

2   which held that attorneys fees could not be awarded in products

3   liability cases —— has been superseded by statute.  Cal Code Civ

4   Pro § 1021.6; <u>Uniroyal Chemical Co, Inc v American Vanguard Corp</u>,

5   203 Cal App 3d 285, 297, 249 Cal Rptr 787 (1988) ("The legislative

6   history of section 1021.6 shows the only reason for its enactment

7   was to correct the injustice created by the <u>Davis</u> decision.").

8   Hence, given the liberal stance of the FRCP 15(a) toward motions to

9   amend, the court GRANTS Braden's motion for leave to file cross-

10  claims.

11

12                                V

13          Accordingly, the court GRANTS Catalina's motion for

14  summary judgment and GRANTS Young Do's motion for summary judgment.

15  The court GRANTS Catalina's motion for leave to amend its third-

16  party complaint, GRANTS IN PART AND DENIES IN PART Western's motion

17  for leave to amend its answer and GRANTS Braden's motion for leave

18  to file cross-claims.  The parties must file any new claims by

19  August 25, 2006, and any answers or responsive pleadings to those

20  claims by September 8, 2006.  Additionally, the parties are

21  instructed to appear for a case management conference on October 3,

22  2006, at 9:00 AM.

23

24          IT IS SO ORDERED.

25

26                          _____

27                          VAUGHN R WALKER

28                          United States District Chief Judge

21